IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARA ASHWORTH | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 23-1534 |
| MAIN LINE HOSPITALS INC. et al | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                                **MAY 29, 2024**

This employment discrimination action arises out of Plaintiff Sara Ashworth's ("Plaintiff" or "Ashworth") former employment with Defendants Main Line Hospitals Inc. and Main Line Health, Inc. ("Defendants," "Main Line Health," or "MLH").  Plaintiff alleges that Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et. seq.*, by failing to grant her a religious exemption from the hospital system's COVID-19 vaccine mandate and terminating her after she did not comply with its vaccination policy.  (Compl., ECF No. 1, ¶¶ 43-44, 57-59.)  Presently before the Court is Defendants' Motion for Summary Judgment.  (Mot., ECF No. 14.)  Defendants seeks a ruling that Plaintiff's Complaint is time-barred because she failed to file a timely charge with the U.S. Equal Employment Opportunity Commission.  (*Id*. at 1, 7.)  For the following reasons, Defendants' Motion will be granted.

**I.      BACKGROUND**

In approximately 2007, Plaintiff began working at Main Line Health, which includes Bryn Mawr Hospital, Lankenau Medical Center, Paoli Hospital, and Riddle Hospital.  (Ashworth Dep. Tr., ECF No. 14-4, at 13:24-14:2.)  From December 2014 until her termination, she worked as a nurse at Paoli Hospital.  (Charge, ECF No. 14-16; Ashworth Dep. Tr. at 14:8-13, 133:13-134:14.)

1

Main Line Health issued a COVID-19 vaccination policy requiring its employees to be vaccinated.  Its COVID-19 Vaccination Policy, dated July 15, 2021, stated that "Main Line Health is requiring full vaccination for all MLH executives, directors, managers, and Medical Staff by October 1, 2021.  All other MLH employees will be required to be fully vaccinated by November 1, 2021." (Employee Health Policy and Procedure Manual, ECF No. 14-5, at 1.) "Employees will not be permitted to work after the established deadlines of October 1 and November 1, 2021 and will be given 2-weeks to initiate the vaccination process before termination of employment occurs." (*Id*.)  The policy specified that "[e]xemption to vaccination may be granted for a valid medical condition or sincerely held religious belief." (*Id*. at 2.)

On August 30, 2021, Plaintiff requested a religious exemption from Defendants' COVID-19 vaccination mandate. (ECF No. 14-6 at 1-4.)  On September 23, 2021, she was notified by email that her exemption request was reviewed by the MLH COVID-19 Vaccine Religious Exemption Committee and denied. (Sept. 23, 2021, email, ECF No. 14-7.)  The email included directions as to how to appeal the decision, which Plaintiff lodged four days later. (*Id*.; Sept. 27, 2021, email, ECF No. 14-8.)  On October 8, 2021, Plaintiff was notified by email that her appeal was denied. (Oct. 8, 2021, email, ECF No. 14-9.)  The email provided the COVID-19 Vaccination Policy, including the aspect of the policy that applied to Plaintiff: "If you are in the November 1st Compliance Group and your Exemption Request has been denied, you must receive the first dose by November 1, 2021 and be in full compliance with the COVID-19 vaccine requirement within 6-weeks of your 1st dose or your employment will be terminated." (*Id*.)

On October 19, 2021, Plaintiff requested by email information about the composition of the group that denied her appeal. (Oct. 19-20, 2021, emails, ECF No. 14-10.)  The next day,

Greg Papa, Vice President of Human Resources at Main Line Health, responded and suggested that Plaintiff speak with Sarah Heilman, the Director of Human Resources at Paoli Hospital, to discuss next steps in the employment process. (*Id*.; Heilman Decl., ECF No. 14-11, ¶ 1.)

On approximately October 20 or 21, 2021, Heilman and Plaintiff met in person for about 30 minutes. (Ashworth Dep. Tr. at 81:12-22, 82:17-20; Oct. 19-20, 2021, emails.) Plaintiff asked Heilman about the impact of her termination on her pension and health benefits and unused vacation and personal time and about applying for unemployment benefits. (Heilman Decl., ¶ 4; Ashworth Dep. Tr. at 83:5-23.) Heilman told Plaintiff that if she worked on November 1, her health insurance benefits would be in effect through the end of November. (*Id*. at 126:7-127:24; Heilman Decl., ¶ 5.) Plaintiff told Heilman that she wanted her last day of work to be November 1, 2021, and so Heilman prepared Plaintiff's termination paperwork to be issued at the end of that day, which she provided to Plaintiff's Nurse Manager, Susan Zuk. (*Id*., ¶¶ 6, 8.) Plaintiff did not advise Heilman that she was considering getting the COVID-19 vaccine or that she wanted to use the two-week grace period under the vaccination policy to consider getting the vaccine. (*Id*., ¶ 7.) Plaintiff sent Heilman an email on October 21, 2021, memorializing their conversation. (Oct. 21-27, 2021, emails, ECF No. 14-12.)

On October 27, 2021, Main Line Health emailed unvaccinated staff members in anticipation of the COVID-19 Employee and Medical Staff vaccination policy's November 1 deadline. (Oct. 27, 2021, email, ECF No. 14-14, at 1.) The email was signed by three executives of Main Line Health: Chief Executive Officer Jack Lynch, Chief Operating Officer Barbara Wadsworth, and Interim Chief Medical Officer Jonathan Stallkamp. (*Id*. at 2.) The email included four key points related to the vaccination policy, of which the last two were relevant to Plaintiff:

1) If you receive the J&J vaccine prior to November 1, you are considered fully vaccinated by the deadline.

2) As long as you receive one dose of the Pfizer or Moderna vaccine prior to the November 1 deadline, you will be permitted to continue to work.  You will receive performance management at the yellow level for missing the policy deadline and must be fully vaccinated within six weeks of your first shot.

3) If you are not partially vaccinated before November 1, 2021 with a first dose of either the Pfizer or Moderna vaccina, you will receive performance management at the orange level for missing the policy deadline and will not be able to work.  You will have until November 15, 2021 to receive a dose of one of the vaccines.  If you do not, you will be terminated.

4) If you remain unvaccinated after November 15, 2021, your employment at Main Line Health will be terminated.

(*Id*. at 1.)  The email continued: "If you do not take the vaccine and exit the organization on November 1, please know we respect your decision and appreciate the service and dedication you gave to Main Line Health."  (*Id*. at 1-2.)

Papa submitted a declaration in support of Defendants' Motion that further explained Steps 3 and 4 of the policy:

> Any employee who had not received a first dose of the COVID vaccine before November 1, 2021, but wanted to use a two-week grace period to decide whether to get the vaccine, would be issued an Orange Performance Management and be placed on furlough.  Such employees were not permitted to work after November 1, 2021.  If the employee received one dose before November 15, 2021, he or she could return to work and was required to receive the second dose within six weeks of the first dose.  Any furloughed employee who did not receive the first dose of the COVID vaccine by November 15, 2021 would be issued Red Performance Management and be terminated.  Employees who were placed on furlough while considering whether to receive the COVID vaccine were not paid during the grace period.

(Papa Decl., ECF No. 14-13, ¶ 6(c).)

Plaintiff's last day working at Main Line Health was November 1, 2021.  (Ashworth Dep. Tr. at 16:12-17:8; Heilman Decl., ¶ 9.)  That day, Zuk called Plaintiff on the phone and told her that she was sending her something to sign.  (Ashworth Dep. Tr. at 98:22-24.)  Zuk emailed

4

Plaintiff a termination notice and said that she was "sorry but you need to sign this." (*Id*. at 92:18-24.) The termination notice or "Performance Management Record" was dated November 1, 2021, and the first page of the notice included a hand-written mark noting that Termination was the type of action being issued. (Performance Management Record, ECF No. 14-15, at 1.) As per the basis for Plaintiff's termination, the notice specified that the "[e]mployee failed to comply with the established Employee Health Policies and Procedures by not being fully vaccinated against COVID-19 by the deadline of 11/01/2021." (*Id*. at 2.) The notice continued: "In accordance with the Code of Conduct Policy, you are being terminated from Main Line Health effective immediately." (*Id*.) Plaintiff recalled reading the entire document. (Ashworth Dep. Tr. at 94:10-14.) In a handwritten note on the last page, Plaintiff wrote that "Employer failed to accept my strongly held religious beliefs about the vaccine. I have been unable to speak with anyone on the exemption committee as they will not tell me who is on this committee. Because of this and having antibodies against Covid19[,] I will not need a vaccine." (Performance Management Record at 3.)

Plaintiff testified at her deposition that she "was basically forced to sign this paper" and she "just was doing what [she] was told." (Ashworth Dep. Tr. at 98:12-14.) She printed the document while she was onsite at Main Line Health, signed it, and gave it to Zuk in person. (*Id*. at 97:1-10.) Zuk and a representative of Human Resources also signed the notice and dated it November 1, 2021. (Performance Management Record at 3, Ashworth Dep. Tr. at 94:22-25; Heilman Decl., ¶¶ 10-11.)

Plaintiff acknowledged at her deposition that no one from Human Resources told her that she was only being placed on furlough on November 1, 2021. (Ashworth Dep. Tr. at 145:17-20.) Similarly, she recalled that her manager, Zuk, did not tell her that she was just being furloughed

when she gave her the notice of termination.  (*Id*. at 145:21-25.)  When she received the termination notice, Plaintiff did not tell anyone that she thought that she had until November 15 to be vaccinated or face termination or ask Heilman or anyone else for clarification.  (*Id*. at 207:7-22, 208:20-209:8, 210:2-211:7, 211:25-212:24.)

Plaintiff testified that she understood that by November 15 she would be terminated if she did not receive the COVID-19 vaccine.  (*Id*. at 34:4-16.)  She thought that "November 1st was the last day physically I could go to work.  Until the 15th – we had until the – two weeks after that . . . [t]o decide if, or not, I was going to get vaccinated."  (*Id*. at 91:10-16.)  Plaintiff's understanding was based on the October 27, 2021, email she received from Jack Lynch.  (*Id*. at 92:11-94:3.)  With respect to which date she was terminated, Plaintiff said, referring to the termination notice dated November 1, "[t]hat was what they made me sign, but I had an e-mail saying that I had until the 15th to make a decision.  And during those two weeks I was hoping that they would change their mind or that God would tell me that I needed to get the vaccine in order to keep my job."  (*Id*. at 138:7-15; *see also* 139:5-13, 140:23-141:2, 141:19-22.)  In light of the October 27, 2021, email stating that unvaccinated employees had until November 15, 2021, to receive one dose of the vaccine, Plaintiff did not believe that her termination was effective immediately on November 1, 2021, even though she does not recall Human Resources or management telling her that she was "just being placed on furlough" on that date.  (*Id*. at 144:8-20, 145:17-146:7, 146:25-147:10.)

Plaintiff did not have any further communication with her manager or Heilman after November 1, 2021, related to her termination or employment.  (*Id*. at 106:2-16, 107:4-109:18.)

Plaintiff produced a paystub covering the pay period from October 31, 2021, to November 13, 2021, which showed that she was paid for 40 hours of work.  (Nov. 19, 2021,

paystub, ECF No. 15-9.)  A December 3, 2021, paystub showed that Plaintiff was compensated for "Basic Leave Terminations."  (Dec. 3, 2021, paystub, ECF No. 15-10.)

On September 9, 2022, Plaintiff, through her attorney, filed a charge with the EEOC in which she wrote that "[o]n November 15, 2021, I was terminated because I would not violate my religious beliefs and get the Covid-19 vaccine."  (Charge.)  She requested that the charge be cross-filed with an applicable state or local agency.  (*Id.*)  On January 25, 2023, Plaintiff was notified that her charge was dismissed and received her right to sue notification.  (Determination and Notice of Rights, ECF No. 14-17, at 1.)  Plaintiff initiated this action on April 21, 2023.  (Compl.)

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party.  *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "[A] factual dispute is material only if it might affect the outcome of the suit under governing law."  *Id.*  The court must view the evidence in the light most favorable to the non-moving party.  *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

## III.    DISCUSSION

This Motion revolves on whether there is a genuine dispute as to the date Main Line Health advised Plaintiff that it had decided to terminate her employment.  On the record before

us, there are no genuine disputes as to any material facts regarding this issue, and we grant Defendants' Motion.

Individuals, such as Plaintiff, who allege claims under Title VII and seek relief in states that have an agency authorized to grant relief for federally prohibited employment discrimination must submit their administrative discrimination charge within 300 days of the challenged employment action.  *See* 42 U.S.C. § 2000e-5(e)(1).  Pennsylvania is such a state.  *See Sharpe v. Philadelphia Hous. Auth.*, 693 F.2d 24, 26 (3d Cir. 1982).  Plaintiff filed her EEOC charge on September 9, 2022 (Charge), and so she can only challenge conduct that occurred within the preceding 300 days, or after November 13, 2021.

"It is well established that for purposes of filing a charge claiming unlawful discharge, the limitations period must be measured from the date on which the employee was advised of the decision to terminate his or her employment."  *Bailey v. United Airlines*, 279 F.3d 194, 198 (3d Cir. 2002) (citations omitted).  A plaintiff's claim accrues on the date an employer communicated to them that they were going to be fired, not on the date that they were actually fired, because the allegedly illegal act is the decision to fire the individual, not the firing itself.  *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981); *see also Bailey*, 279 F.3d at 198 (holding that "the date the plaintiff was advised he was to be discharged" is determinative, "as opposed to the date of separation").

In other words, "for the purposes of a claim of unlawful discharge, the limitations period is triggered on the date when an employer establishes its official position to terminate an employee and communicates that position to the affected employee."  *Welde v. Nat'l Disease Rsch. Interchange*, No. 04-5905, 2007 WL 1244484, at *4 (E.D. Pa. Apr. 25, 2007) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258-59 (1980)).  "[T]he decision to terminate must

be 'unconditional,' and notice of the employer's 'definitive conclusion' must be unequivocal." *Welde*, 2007 WL 1244484, at *4 (citations omitted).

"The proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts bec[o]me most painful." *Ricks*, 449 U.S. at 258 (quoting *Abramson v. Univ. of Hawaii*, 594 F.2d 202, 209 (9th Cir. 1979)). As a result, once an employer's termination decision has been communicated, "the mere speculative possibility of continued employment does not alter" when the limitations period begins to accrue. *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 853 (3d Cir. 2000). A "notice of termination [is not] rendered ambiguous by the mere potential for continued employment." *Watson*, 235 F.3d at 856 (citing *Ricks*, 449 U.S. at 260-61.)

For example, in *Datto v. Harrison*, 664 F. Supp. 2d 472, 485 (E.D. Pa. Sept. 9, 2009), a plaintiff was notified that he was dismissed from his M.D./Ph.D. program at Thomas Jefferson University by letter on May 31, 2005. The letter stated that the "Jefferson Committee on Student Promotion 'has decided that your status at Jefferson Medical College has been officially terminated.'" *Id*. at 479, 485. The plaintiff argued that the statute of limitations for his disability discrimination claims began to accrue after he was notified that his appeal of the dismissal was denied, or approximately on July 12, 2005. *Id*. at 483. The district court rejected plaintiff's argument and held that plaintiff's claims began to accrue after he was notified that he was "officially terminated" in May 2015. *Id*. at 485. The district court reasoned that the language in the May 2015 letter was "not equivocal" and described "a complete decision to dismiss the plaintiff" and his "current status as 'officially dismissed.'" *Id*. Through the letter, Jefferson "made and communicated" its decision. *Id*. Plaintiff's appeal of Jefferson's decision and "the possibility that it could have been reversed do not change when the cause of action accrued or

otherwise toll the statute of limitations." *Id*. The appeal process represented "an opportunity for the plaintiff to have the defendants reconsider a decision that had already been made," and so the "cause of action arose when the initial decision was communicated to him, not upon the conclusion of his appeal." *Id*.

Defendants argue that Plaintiff received written notification on November 1, 2021, that she was being terminated immediately, and that Plaintiff cannot argue after the fact that she was terminated on November 15, 2021. (Mot. at 8.) While an October 27, 2021, email indicated that there was a two-week grace period from November 1, 2021, to November 15, 2021, for employees to get a vaccine and not be terminated, Defendants maintains that Plaintiff did not communicate to Defendants that she was considering getting vaccinated to benefit from this two-week grace period. (*Id*. at 8-9.)

Plaintiff maintains in opposition that a question of fact exists as to "Plaintiff's actual termination date" because she can offer evidence in the record to support her "belief and understanding" that her termination occurred on November 15, 2021. (Opp'n, ECF No. 15-1, at 3 (ECF pagination).) She claims that Main Line Health paid her "regular paycheck" when she was allegedly furloughed from November 1, 2021, to November 15, 2021, and made a termination payment afterwards, and that these payments support Plaintiff's "belief and understanding that she was furloughed consistent with its policy and terminated on November 15, 2021." (*Id*. at 5.)   Plaintiff maintains that while Defendants can point to the November 1, 2021, termination notice, she can rely on policy documents and paystubs to support that she was not terminated until November 15, 2021. (*Id*.) Plaintiff argues that if her termination date was November 15, 2021, as she presented in the Charge, then there is no dispute that her charge was timely filed. (*Id*.)

10

We agree with Defendants that there is no dispute that November 1, 2021, is the relevant date for statute of limitations purposes, as that was the day that Defendants notified Plaintiff that she was being terminated, effective immediately.  See *Datto*, 664 F. Supp. 2d at 485; (*see* Performance Management Record; Ashworth Dep. Tr. at 92:18-24, 94:10-14; Heilman Decl., ¶ 6, 8).

Plaintiff relies on her paystubs to argue that she was merely furloughed on November 1, 2021, and terminated on November 15, 2021.  (*See* Opp'n at 5.)  However, according to Main Line Health's Vice President of Human Resources, employees who were placed on furlough while considering whether to receive the COVID vaccine were not paid during the grace period.  (Papa Decl., ¶ 6(c).)

More foundationally, Plaintiff's position is flawed because she focuses on her "actual termination date," (*see* Opp'n at 3), rather than the date a representative of Defendants communicated to Plaintiff that she would be terminated.  See *Bailey*, 279 F.3d at 198.  Plaintiff's actual termination date is irrelevant; what matters is when Main Line Health informed her of its intent to terminate her.  See *Chardon*, 454 U.S. at 8; *Bailey*, 279 F.3d at 198.  There is no evidence in the record that a member of Human Resources, Plaintiff's manager, or another individual in a managerial position informed Plaintiff after November 1, 2021, that she was going to be terminated for not complying with Defendants' vaccination mandate.  To the contrary, Plaintiff acknowledged that she did not have any further communication with her manager or Heilman related to her termination or employment after November 1, 2021.  (Ashworth Dep. Tr. at 106:2-16, 107:4-109:18.)

This case is unlike *Bailey*.  *In Bailey*, a pilot supervisor called James Bailey, a United Airlines pilot, on March 4, 1993, and told him to report to the chief pilot's office the next day.

279 F.3d at 197.  The parties disputed the substance of the telephone conversation.  *Id*.  Bailey attended a meeting at the chief pilot's office on May 6, at which he was given the option of resigning or being terminated.  *Id*.  Bailey argued that the statute of limitations began to run on May 6, 1993, the undisputed day on which United officially gave him the option to resign or be terminated, while United argued that the limitations period began to run on May 4, 1993, the day a United supervisor allegedly called Bailey and told him that a meeting had been convened and that his employment would be terminated.  *Id*. at 199.  The court held that evidence in the record did "not show conclusively that Bailey received notice that he was going to be terminated prior to his meeting on May 6th with the chief pilot," and as a result there was a genuine issue of material fact as to when United's termination decision was communicated to Bailey.  *Id*. at 201-02.  Here, in contrast, there can be no dispute that representatives of Defendants communicated to Plaintiff that she was going to be fired on November 1, 2021, and Plaintiff admits that she had no further communication with representatives of Defendants after November 1 regarding their decision to terminate her or her employment.  (*See* Ashworth Dep. Tr. at 106:2-16, 107:4-109:18.)

Furthermore, that Main Line Health's vaccination policy included a grace period in which an individual could be vaccinated and remain employed after the November 1, 2021, deadline does not undermine the fact that Plaintiff was informed that she was terminated on November 1, 2021.  *See Datto*, 664 F. Supp. 2d at 485.  As in *Datto*, Plaintiff's termination notice was unequivocal because it stated that "you are being terminated from Main Line Health effective immediately" because you "failed to comply" with established policies and procedures by not "being fully vaccinated against COVID-19 by the deadline of November 1, 2021." (Performance Management Record at 2.)  A "notice of termination [is not] rendered ambiguous

by the mere potential for continued employment." *Watson*, 235 F.3d at 856. "[T]he possibility that [the termination decision] could have been reversed [had Plaintiff been vaccinated by November 15, 2021, does] not change when the cause of action accrued or otherwise toll the statute of limitations." *See Datto*, 664 F. Supp. 2d at 485.

Accordingly, we find that there are no genuine issues of material fact with respect to when Defendants advised Plaintiff that she was going to be terminated. The operative date for statute of limitations purposes is November 1, 2021, and Plaintiff's EEOC charge is accordingly time-barred because it challenges conduct that occurred before November 13, 2021.

Defendants also argue that Plaintiff's Pennsylvania Human Relations Act claims are time-barred. (Mot. at 14.) Plaintiff did not address this argument. (*See generally* Opp'n.) We agree with Defendants.

To file suit under the PHRA, a plaintiff must have first filed an administrative complaint with the Pennsylvania Human Relations Commission within 180 days of the date of the alleged act of discrimination. 43 PA. CONS.STAT. §§ 959(h). Pennsylvania courts have strictly interpreted this requirement. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997). Absent circumstances justifying equitable tolling, "if the PHRC does not receive the complaint within 180 days from the date of the alleged act of discrimination, whether filed with the PHRC directly or filed first with the EEOC and later transmitted by the EEOC to the PHRC, the plaintiff is precluded from pursuing claims under the PHRA." *Gharzouzi v. Nw. Human Serv. of Penn.*, 225 F. Supp. 2d 514, 527 (E.D. Pa. 2002). Here, Plaintiff requested that her charge be cross-filed with an applicable state or local agency. (Charge.) However, Plaintiff filed her EEOC charge 312 days after being advised that she was being terminated, and even assuming

that it was transmitted by the EEOC to the PHRC, it was sent after the 180-day deadline. Accordingly, Plaintiff's PHRA claims are time-barred and cannot be asserted in this action.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion is granted. The Clerk of Court is directed to mark this matter as closed. An appropriate Order follows.

**BY THE COURT:**

*/s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**